UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LA WILLIAMS,<br><br>    Plaintiff,<br><br>v.<br><br>HARTFORD INSURANCE COMPANY<br>OF THE MIDWEST,<br><br>    Defendant. | Case No. 18-cv-02552<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff La Williams sued Defendant Hartford Insurance Company of the Midwest for breach of contract and for bad faith under the Illinois Insurance Code. [1] (Ex. A). Defendant moved for summary judgment. [36]. For the reasons explained below, this Court grants Defendant's motion.

### I. Background

#### A. Local Rule 56.1 and Evidentiary Rules

The facts in this discussion come from Defendant's Local Rule 56.1 statement of material facts [38]. Plaintiff failed to provide an additional statement of material fact, but instead only responded to portions of Defendant's statement of facts. Based upon the inadequacy of those many of those responses, Defendant asks this Court to admit several of its facts. [41] at 3–6.

This Court has broad discretion to enforce the local rules governing summary judgment. *See, e.g., Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014); *Benuzzi*

1

*v. Bd. of Educ. of Chi.*, 647 F.3d 652, 655 (7th Cir. 2011). Under the local rules, a party's responses to the opposing party's statements of fact must contain "specific references" to record evidence to justify any denial. Local R. 56.1(b)(3); *see also Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Thus, purely argumentative denials, legal conclusions, and unsupported general denials are inadequate. *See Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012); *Malec*, 191 F.R.D. at 584. District courts may disregard any improper denials and deem the opponent's corresponding fact statements admitted. *See Aberman v. Bd. of Educ. of Chi.*, 242 F. Supp. 3d 672, 677 (N.D. Ill. 2017).

Accordingly, this Court disregards Plaintiff's denials to the following paragraphs of Defendant's statement of facts: 19, 36, 41, 50, 52–53, 59–63. Those denials fail to cite record evidence that refutes Defendant's statements, and merely denying a fact that has evidentiary support "does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment." *Roberts v. Advocate Health Care*, 119 F. Supp. 3d 852, 854 (N.D. Ill. 2015). Additionally, this Court disregards Plaintiff's denials based upon her inability to admit or deny the statement as contained in paragraphs: 24–29.

This Court also disregards Plaintiff's unsubstantiated arguments and characterizations that omit citations to the record. *See De v. City of Chi.*, 912 F. Supp. 2d 709, 712 (N.D. Ill. 2012) (internal punctuation omitted) (quoting *Smith v. Lamz*, 312 F.3d 680, 683 (7th Cir. 2003)) ("A mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.").

Accordingly, this Court deems admitted the following paragraphs of Defendant's statement of facts: 21, 23, 31–33, 40, 44, 55, 56.

Plaintiff also disputes several of Defendant's facts by citing to her deposition generally. *See, e.g.*, [39] ¶¶ 10–14, 16–18. But Plaintiff's generic deposition citations lack specificity, as they do not provide a docket entry number, exhibit number, or line citations. *Id*. As such, they remain difficult to locate and review, and may be stricken on this ground alone. *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817–18 (7th Cir. 2004). This Court nevertheless reviewed Plaintiff's deposition. Her denials regarding Mr. Slack's January 2015 inspection, [39] ¶¶ 10–13, however, fail to create a genuine factual dispute because her testimony concerns his March 2015 inspection while Defendant's facts regard Mr. Slack's January 2015 inspection. For this reason, this Court disregards Plaintiff's response to the following paragraphs of Defendant's statement of fact: 10–13.

## B. Factual Background

In March or April 2015, Plaintiff purchased a condo located at 2215 East 68th Street. [38] ¶ 4. In January 2015, prior to purchasing the condo, Plaintiff hired Leon Slack of GS&TJ Services to perform an inspection. *Id*. ¶ 8. At this inspection, Mr. Slack noticed "signs of past water damage." *Id*. ¶¶ 9–11. Following the inspection, Mr. Slack prepared a written home inspection report, which included his observations about longstanding water damage. *Id*. ¶ 14.

In March, Mr. Slack undertook a second home inspection, *id*. ¶ 15, where he again noticed issues with the building's roof and possible water leakage, *id*. ¶¶ 16–17

3

(noting the roof was old with deep cracks, meaning it was not waterproof). Mr. Slack did not, however, create a written report of this inspection until three or four years later. *Id.* ¶ 18. He testified that he eventually created a written report at Plaintiff's request because "she was suing someone." *Id.* ¶ 19. Mr. Slack also testified that Plaintiff called him following the inception of this case in order to dissuade him from complying with Defendant's discovery requests. *Id.* ¶¶ 50–53.

Shortly after Plaintiff purchased her condo, she emailed the home owners association seeking an "immediate roof repair" for a gaping hole "due to a deteriorated pipe cap" and other leaks. *Id.* ¶ 21. A month later in May 2015, Plaintiff again contacted the HOA to request that it prioritize repairing the roof. *Id.* ¶ 23. Eventually, in November 2015, the HOA hired Rogers Roofing to tarp the building's roof. *Id.* ¶ 25. The HOA viewed this action as a temporary solution to prevent further leakage until the entire roof could be replaced. *Id.* Rogers Roofing tarped the roof on December 3 or 4, 2015. *Id.* ¶ 26. Plaintiff claims the sole cause of the water damage to her condo was the result of nailing the tarp to the roof. *Id.* ¶ 46; *see also* [40] at 3, 9 (explaining "the leak was caused by the nail punctures to hold down the tarp"); [39] ¶¶ 27, 46.

As relevant here, Defendant issued Plaintiff an insurance policy for her condo, effective from December 29, 2015 through December 29, 2016. [38] ¶ 30. The policy was not meant to protect Plaintiff from all possible damage but to protect her condo from unexpected losses, such as fire, lightening, or vandalism. *See id.* ¶ 31. For that reason, the policy protected Plaintiff's condo from several identified "perils," but also

4

excluded coverage in a variety of scenarios. *Id*. Among other things, the policy excluded coverage for losses caused by the acts, errors, or omissions of the insured or third-parties as well damage resulting from wear and tear and/or constant seepage known by the insured. *Id*.

Around July 14, 2016, Plaintiff first reported a claim to Defendant for water damage to her condo due to roof leakage. *Id*. ¶ 32. She also told Defendant that water began leaking into her unit in April 2015. *Id*. In response to Plaintiff's claim, Defendant inspected Plaintiff's condo in July 2016. *Id*. ¶ 34. After the inspection, Defendant denied Plaintiff coverage because it concluded that the water leakage was longstanding and predated the policy. *Id*. ¶¶ 36–37. Defendant, however, reopened Plaintiff's claim in March 2017, so that Plaintiff could proffer additional documents and submit to an Examination Under Oath. *Id*. ¶ 38. On January 22, 2018, Defendant again denied Plaintiff coverage. *Id*. ¶ 43.

## II. Legal Standard

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record" and cannot rely upon the pleadings or

5

speculation. *Olendzki v. Rossi*, 765 F.3d 742, 746 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(c)(3)).

At summary judgment, courts must evaluate evidence in the light most favorable to the non-moving party and refrain from making credibility determinations or weighing evidence. *See Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the initial burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Even so, the non-moving party must then provide more than a mere "scintilla of evidence" to create a genuine issue of material fact. *Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.*, No. 08-CV-111, 2011 WL 1374980, at *2 (N.D. Ill. April 12, 2011) (internal quotation marks omitted) (quoting *Anderson*, 477 U.S. at 248) (noting there must be more than some "metaphysical doubt" as to the material facts).

### III. Analysis

Defendant claims that summary judgment is warranted as Plaintiff cannot establish a *prima facie* case because the damage: (1) preexisted the policy and (2) was not fortuitous. [37] at 4–7. Defendant also asserts that even if Plaintiff made a *prima facie* case, summary judgment is appropriate because Plaintiff's claim falls into various excluded events specifically carved out in the policy. *Id.* at 9–14.

#### A. Plaintiff Has Not Made a *Prima Facie* Case for Coverage

To withstand a motion for summary judgment, the plaintiff bears the burden of showing sufficient facts to establish a *prima facie* case for coverage. *Wallis v.*

*Country Mut. Ins. Co.*, 723 N.E.2d 376, 379 (Ill. App. Ct. 2000).¹ In order to establish a *prima facie* case, the plaintiff must show that he or she suffered a fortuitous loss that occurred within the policy period. *Johnson Press of Am., Inc. v. N. Ins. Co. of N.Y.*, 791 N.E.2d 1291, 1298 (Ill. App. Ct. 2003). Plaintiff faces several hurdles in accomplishing this task.

First, it is doubtful that she suffered a loss within the policy period. The policy period began on December 29, 2015. [38] ¶ 30. The tarp, however—which Plaintiff alleges caused her loss, *id.* ¶ 46; [40] at 3, 9; [39] ¶ 25—was nailed on December 3 or 4, 2015, [38] ¶ 26, several weeks before the policy inception, *id.* ¶ 30. Thus, she did not suffer a loss during the policy period as required to state a *prima facie* case.

Likewise, if Plaintiff relies upon the date the leaking began as the loss date (rather than the date of the event that caused the leaking, i.e. when the tarp was installed), then this date would place the loss in the spring of 2016, [40] at 1; but even under this theory, Plaintiff still fails to state a *prima facie* case. To survive summary judgment, Illinois law requires Plaintiff to show some facts evincing that her loss was the result of a fortuitous event. *Johnson Press of Am.*, 791 N.E.2d at 1298. Illinois courts define fortuitous as "happening by chance or accident" or "occurring unexpectedly or without known cause." *Id.* at 1298. Furthermore, the "determination of whether a loss is fortuitous is a legal question for the court to determine." *Id.*

---

¹ Defendant maintains that Illinois law applies because it issued the policy in Illinois and the policy covered an Illinois property. [37] at 4 n.1. Plaintiff does not dispute this contention. *See generally*, [40] (applying Illinois law).

In this case, before Plaintiff ever purchased the condo, Mr. Slack's first home inspection warned of water leakage. [38] ¶¶ 10–13; [40] at 3. Mr. Slack again warned of leakage and water damage in his second inspection. [38] ¶¶ 16–17. What's more, right after purchasing her condo, Plaintiff alerted the HOA of the dire state of the building's roof. *Id.* ¶¶ 21, 23. Thus, even assuming the leak was caused by the tarp installation as Plaintiff claims, that event can hardly be described as fortuitous. Instead, the tarp installation amounted to temporary measure in response to the building's longstanding roof deterioration and water leakage.

Indeed, far from being a fortuitous event, Plaintiff's damage instead constituted a "known loss." Under the "known loss" doctrine, insurance policies presumptively exclude losses when those losses "exist" or are "probable or imminent at the time the parties enter into the insurance agreement." *Zaragon Holdings*, 2011 WL 1374980, at *4. The doctrine's only exception applies when the parties intend for the policy to cover known losses. *Grey Direct, Inc. v. Erie Ins. Exch.*, 460 F.3d 895, 899 (7th Cir. 2006) (citing *Outboard Marine v. Liberty Mut. Ins.*, 607 N.E.2d 1204, 1210 (Ill. 1992)). Plaintiff's water damage falls under this doctrine because, as explained above, when she purchased the policy, she had reason to know that there existed a substantial risk that her condo might be damaged by water leaks. *Id.* Moreover, the policy does not contain any language showing the parties intended to cover preexisting losses. [38] ¶ 31. Thus, the known-loss doctrine also prevents Plaintiff from establishing a *prima facie* case for coverage.

For these reasons, Plaintiff's claims fail as a matter of law.

## B. Policy Exclusions Preclude Coverage

Even assuming Plaintiff established a *prima facie* case, several policy exclusions also preclude her claim.[2]

For example, the policy excludes coverage when the acts, errors, or omissions of the insured or others directly or indirectly damage her property. *Id.* The policy states:

> **SPECIFICALLY EXEMPTED FROM THIS POLICY. WE DO NOT COVER OR INSURE AGAINST LOSS OR DAMAGE DIRECTLY OR INDIRECTLY CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY, OR WHICH WOULD NOT HAVE OCCURRED BUT FOR EITHER OF THESE PERILS:**
>
> **A. ACTS, ERRORS OR OMISSIONS** by you or others in:
> * * *
> 3. The design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of all or any part of the following:
>     a. Land or buildings or other structures;
>     b. Roads, water or gas mains, sewers, drainage ditches, levees, dams, or other facilities; or
>     c. Other improvements or changes in or additions to land or other property.
> 4. The furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction of any of the above property or facilities; or
> 5. The maintenance of any such property or facilities.

---

[2] Plaintiff argues that Defendant waived any arguments that the policy exclusions preclude coverage because it did not raise these defenses when it communicated with Plaintiff prior to her filing this suit. [40] at 7. Defendants, however, are not committed to or precluded from any legal defenses until the plaintiff files a complaint. *Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 614 (7th Cir. 2012) ("To require a potential defendant to commit irrevocably to defenses before he is sued would be unreasonable to the point of absurdity.").

*Id.* (formatting and emphasis in original). Defendant claims that the faulty tarp installation qualifies as an act under this provision. [37] at 9–10. Plaintiff counters that the tarp installation constituted an "improvement" rather than an "act," but provides no rationale as to why purported "improvements" do not fall under the umbrella of "acts." [40] at 7–8. Based upon the record, this Court agrees that there remains no genuine dispute that the actions of the contractor in nailing the tarp contributed to the leakage, and thus properly falls under this exclusion.

Defendant also points to the Deterioration and Constant Seepage exclusions, [38] ¶ 31, as another basis for granting summary judgment, [37] at 11–12. These provisions are designed to protect Defendant from paying for damage caused by overall structural corrosion of the building. *See* [38] ¶ 31. As it relates to deterioration, the policy declares:

> 1. We insured against risk of direct physical loss to property described in Coverage **A.**
> 2. We do not insure, however, for loss:
>    a. Excluded under Section **I**-Exclusions;
>    b. Involving collapse, except as provided in **D.8.** Collapse under Section **I** - Property Coverages.
>    c. Caused by:
>                            * * *
> (6) Any of the following:
>    (a) Wear and tear, marring, deterioration

*Id.* (formatting in original). As to pervasive water seepage, the policy states it excludes coverage resulting from:

> [c]onstant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the

10

> resulting damage is unknown to all "insureds" and is hidden within the walls or ceiling or beneath the floors or above the ceilings of a structure.

[38] ¶ 31.

Defendant argues that the overall deterioration of the roof caused Plaintiff's loss and that she knew or should have known of the roof's poor condition by the time she entered into the policy. [37] at 11–12. Plaintiff fails to respond to this argument. *See generally*, [40]. She has, therefore, waived any response to it. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (determining plaintiff abandoned a claim when he failed to raise it in his opposition to summary judgment). Relatedly, even if Plaintiff had not waived this argument, she also failed to introduce any material facts establishing a genuine dispute as to whether the building's roof had deteriorated. Indeed, the facts in the record show that the building's roof was progressively deteriorating when she suffered the loss. *See, e.g.*, [38] ¶¶ 16–17, 21, 32. Therefore, this Court agrees that the Deterioration and Constant Seepage exclusions preclude Plaintiff's claim.

For these reasons, even if Plaintiff established a *prima facie* case for coverage, summary judgment would nevertheless be appropriate as there remains no genuine issue of material fact that the Acts, Errors, and Omission Exclusion, as well as the Deterioration and Constant Seepage Exclusions preclude coverage.[3]

---

[3] Defendant also argues that the Concealment/Fraud Cooperation provision excludes Plaintiff's claims. [37] at 12–14. This provision exempts insureds from coverage when they engage in fraud or otherwise do no cooperate with Defendant's claim inspection process. *Id.* at 12–14; [38] ¶ 31. But resolving this issue would likely require a credibility determination, which this Court cannot do at this stage of the proceedings. *Anderson*, 477 U.S. at 255. In any event, because this Court already granted summary judgment on other grounds, it need not address the merits of this argument.

C.  **Section 155 of the Illinois Insurance Code**

Plaintiff also sued Defendant for violation of Section 155 of the Illinois Insurance Code. [1] (Ex. A). This statute creates penalties for insurance companies who engage in vexatious and unreasonable conduct. 215 ILCS 5/155. Defendant cannot be liable under Section 155, though, because it does not owe Plaintiff any benefits under the policy. *Johnson Press of Am.*, 791 N.E.2d at 1300. Accordingly, this Court also grants Defendant's motion for summary judgment as to Plaintiff's Section 155 claim.[4]

IV. **Conclusion**

For the reasons stated above, this Court grants Defendant's motion for summary judgment [36]. The Clerk shall enter judgment for Defendant and against Plaintiff. All dates and deadlines, including the October 21, 2019 trial date, are stricken. Civil case terminated.

Dated: October 2, 2019

                                                          Entered:

                                                          John Robert Blakey
                                                          United States District Judge

---

[4] Because this Court grants Defendant's motion for summary judgment on other grounds, this Court does not need to address Defendant's final argument regarding whether Plaintiff could sufficiently prove her damages. [37] at 7–9.